The judgment of the court was pronounced by
Eustis, C. J.
In this suit a large amount of bills and notes, and other assets of the bank, defendant, were attached in the hands of Jeptha Fowlkes, its president, who was at the time in this city, and who stated, under oath, that he intended in a few days to leave it for his home in Tennessee. The property attached was, by an order of the court, delivered to the sheriff, and is now subject to its control. The court of the first instance ordered this property to be delivered over to an intervenor, who had been appointed, by a decree of the Court of Chancery for the Middle Division of Tennessee, i-eceiver of the effects of the bank, and thus defeated the attachment. From this judgment of the court the present appeal is taken by the plaintiff, who was an attaching creditor. He has since died, and his representative has been made a party in this court.
To take the statement of the facts as admitted by the counsel for the plaintiff, it appears that a suit was instituted in the Court of Chancery at Memphis by Thomas S. Cope and others, stockholders of the bank, against the bank, in which Fowlkes its president, and other directors, were parties defendant; that during an unsuccessful attempt to enforce the process of the court of chancery, Fowlkes, the garnishee, obtained possession of and ran off with the property which is attached in this case. The property which thus stands before us for adjudication, thus appears to have been brought within the jurisdiction of this court in disobedience and in violation of the process of a court of a sister State, and in fraudulent violation of the rights of property of its real owners. It is proved, that the process of the court of chancery, and a writ of injunction and an order directing the delivery of the assets of the bank forthwith to the receiver appointed was duly served on Fowlkes, as well as on the directors of the bank.
The grounds on which it is contended the judgment of the district court is to be reversed, are: 1. That a receiver in chancery cannot maintain a suit without special authority from the court which appoints him. 2. That the possession of the property attached, not having been in the receiver, it is liable to the process of attachment at the instance of a bona, fide creditor.
We will not enquire into the technical question whether the authority of the chancellor is necessary to institute a suit at law; it is sufficient for us that property, in relation to which an order of a court of a sister State of competent jurisdiction has been issued, has been fraudulently or forcibly withdrawn from its jurisdiction by a party to the suit, and that the injunction issued in this ease by the chancellor is still in force and binding upon the offending party. The order of the court of chancery is a sufficient authority for the intervenor to receive the assets of the bank ; and the delivery to him will be a good delivery, binding upon the bank, as well as in the furtherance of justice. We have uniformly discountenanced all attempts, in whatever form they may be made, of making our courts instruments for defeating the action of courts of other States on property within their jurisdiction, by means of clandestine or forcible removal to this State. The only decree which we render in such cases is that of immediate and prompt restitution, or one preventing any rights to be acquired by these attempts to defeat the ends of justice.
This is an answer to the question raised concerning the peculiar right of the creditor. The only right which he in any event could reach, would be subordinate to the injunction from the operation of which this property has been attempted to be removed. Not only on general principles, but on the cases cited by the learned judge who decided this case, the claim of the plaintiff to subject this property to attachment is without the shadow of right. In the case of Simmins v. Garrison, 4 Humphreys, 148, which occured in the State in which *712 the occurence before us took place, a slave was decoyed from his owner for the purpose of subjecting him to the jurisdiction of the courts, under an attachment. The owner was a non-resident, and the court dismissed the attachment declaring that such an act could not give jurisdiction, and the chancellor ordered the slave to be taken to the State line and delivered to his owner, who resided in a contiguous State.
The judgment of the district court is therefore affirmed, -with costs.